Filed 5/4/26  In re B.K. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re B.K. et. al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, Plaintiff and Respondent, v. N.K. et al., Defendants and Appellants. | E087199 (Super.Ct.No. DPRI2000001) OPINION |

APPEAL from the Superior Court of Riverside County.  Walter H. Kubelun, Judge.  Affirmed.

Michelle D. Pena, under appointment by the Court of Appeal, for Defendant and Appellant, N.K.

Michelle Jarvis, under appointment by the Court of Appeal, for Defendant and Appellant, D.K.

1

Minh C. Tran, County Counsel, Jamila T. Purnell, Assistant County Counsel, and Catherine E. Rupp, Deputy County Counsel, for Plaintiff and Respondent.

## I. INTRODUCTION

N.K. (Mother) and D.K. (Father) appeal from an order terminating their parental rights with respect to three children: B.K., K.K., and E.K. The only argument asserted on appeal is that the juvenile court erred by failing to properly consider and apply the statutory parental benefit exception, which generally prohibits the termination of parental rights where the juvenile court "finds a compelling reason for determining that termination would be detrimental to the child" because "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (Welf. & Inst. Code,[1] § 366.26, subd. (c)(1)(B)(i).) For the reasons set forth below, we find no abuse of discretion and affirm the order.

## II. BACKGROUND

A. *Facts and Procedural History*

Father and Mother are the parents of B.K., K.K., and E.K. In November 2020, B.K. and K.K. were detained by the San Bernardino Department of Children and Family Services (CFS) following reports of parental drug use and domestic violence in the home. In February 2021, the juvenile court declared B.K. and K.K. dependents pursuant to section 300, subdivisions (a), (b), and (j); formally removed the children from the parents' custody; and granted the parents reunification services. E.K. was born during the

_____

[1] Undesignated statutory references are to the Welfare and Institutions Code.

course of the dependency proceedings but was also declared a dependent of the juvenile court and removed from the parents' custody in March 2022.

In October 2022, the juvenile court found that efforts at reunification had been unsuccessful and terminated reunification services to both parents. However, the juvenile court found a compelling reason not to set the matter for hearing under section 366.26 and instead placed the children in the home of a maternal aunt under a permanent plan of legal guardianship. Under the plan of legal guardianship, the parents were granted weekly supervised visitation.

In March 2023, CFS discovered that the maternal aunt had been permitting unsupervised contact between the parents and the children. As a result, CFS filed a supplemental petition pursuant to section 387, alleging that the previous disposition had been ineffective. The juvenile court sustained the allegations of the section 387 petition, and the children were removed from the home of the maternal aunt.

In June 2024, the juvenile court granted a motion to transfer the case to the Riverside County Superior Court.

B. *Section 388 Petitions*[2]

In March 2025, Father and Mother filed petitions pursuant to section 388. Their petitions sought family maintenance services or, in the alternative, reunification services

---

[2] The record shows that the parents filed multiple section 388 petitions throughout the course of the dependency proceedings. However, the parents appeal only from the order terminating parental rights. As such, we summarize only the petitions actually considered at the section 366.26 hearing to the extent that the information provided in these petitions are relevant to the order terminating parental rights.

3

with authorization to liberalize visitation and pursue a goal of family maintenance. With respect to changed circumstances, both parents alleged they had completed the case plan originally set by CFS prior to the termination of reunification services. With respect to best interests, Father asserted that he is a "loving father," spends quality time with his children during visits, and the "children want to visit their father and he believes that his children want to return home to him." Mother asserted that the children would benefit from retaining their cultural heritage, look forward to seeing parents during visits, and are "visibly disappointed when they are kept from visiting with their parents." The juvenile court set a contested evidentiary hearing on the parents' section 388 petitions.

C. *Section 388 and 366.26 Hearing*

In October 2025, the juvenile court held a combined hearing to consider the parents' section 388 petitions and the selection of a permanent plan pursuant to section 366.26. DPSS submitted the following documentary evidence at the hearing: (1) a report filed May 19, 2025; (2) a report filed May 23, 2025; (3) an addendum report filed in August 2025; (4) a report filed October 7, 2025; and (5) an addendum report filed October 15, 2025. Father and Mother did not present any additional testimony or evidence at the time of hearing.

1. May 19, 2025 Report

DPSS submitted a single report addressing issues related to the parents' section 388 petitions, the section 366.26 hearing, and its obligation to update the juvenile court

4

regarding the status of the children pursuant to section 366.3.[3] DPSS reported that all three children had been placed together in a prospective adoptive home for approximately five months. A summary of each child's educational, developmental, medical and mental/emotional wellbeing did not flag any issues that could not be adequately addressed with future services in their current placement.

DPSS provided a summary of visitation between November 2024 and March 2025. While it noted some difficulties with scheduling visits, visitation occurred regularly and the interaction between the parents and the children were positive. DPSS reported one incident in December 2024 in which B.K. and K.K. expressed sadness when the parents did not appear for a visit but noted that the visitation eventually ended positively because the siblings provided each other with emotional support. In January 2025, K.K.'s caregiver reported that K.K. displayed emotional regression following visits.

2. May 23, 2025 Report

DPSS submitted a second report intended to provide a formal response to the parents' section 388 petitions and additional information relevant to a section 366.26 hearing. With respect to the parents' section 388 petitions, DPSS noted that both parents had refused to participate in any investigation related to the allegations asserted in their petitions. This included declining to participate in renewed drug testing and declining to

---

[3] Generally, section 366.3 requires periodic reviews related to dependent children in cases in which parental rights have not been terminated, but the implementation of a permanent plan has not yet been completed. (§ 366.3, subds. (a), (d).)

give permission for DPSS to conduct an evaluation of their current home.

With respect to visitation, DPSS reported that the parents had continued to participate in visitation with the children and that the visitations were generally positive. It also noted that the children's caregiver reported that the children often displayed a period of increased defiance and difficulty processing emotions following visits.

Finally, a social worker interviewed the children regarding their understanding of the status of the case. B.K. expressed his understanding that the prospect of adoption would mean separation from his birth parents, acknowledged that the idea made him feel sad, but also expressed happiness at the idea of living together with his siblings in the prospective adoptive parents' home. K.K. also expressed his understanding that the prospect of adoption would sever his connection with his birth parents, acknowledged that the idea made him feel nervous and sad, but also expressed happiness at the prospect of living together with his siblings. E.K. was noted as being too young to discuss adoption in detail.

3. August 2025 Addendum Report

In an addendum report, DPSS documented three subsequent attempts to request that the parents participate in drug testing to permit DPSS to investigate the allegations of changed circumstances in support of the JV-180 hearing. On each occasion, the parents declined to participate. As a result, the social worker concluded that "DPS[S] was unable to assess any sustained benefit" from the prior services received through CFS and "was unable to complete a comprehensive assessment of [the parents'] current capacity to care for their children safely."

6

4. <u>October 7, 2025 Report</u>

DPSS submitted a single report providing updated information related to the parents' section 388 petitions, the section 366.26 hearing, and periodic review under section 366.3. Mother and Father continued to decline to participate in efforts by social workers to investigate their current home environment in response to the pending section 388 petitions. DPSS again provided a summary of each child's educational, developmental, medical, and mental/emotional wellbeing and did not flag any issues that could not be adequately addressed with future services in their current placement. DPSS reported that visitation between the parents and the children remained consistent and pleasant but also noted that, during most visits, the children appeared to entertain themselves without much direct parental interaction.

DPSS confirmed that the children had been placed together in a prospective adoptive home for approximately 10 months; the children had been developing as a family unit with their prospective adoptive caregivers; and Mother and Father had struggled with directly engaging with the children during visits. As a result, DPSS recommended termination of parental rights with adoption as a permanent plan for the children.

5. <u>October 15, 2025 Addendum Report</u>

DPSS submitted an addendum report documenting the events of a recent visit between the parents and the children. According to the report, social workers had to adjust the location of a scheduled visit at a park due to inclement weather. Mother and Father were notified in advance but began to express their frustration and openly argue

with the social worker in front of the children when they arrived at the new visit location. The parents ignored the social worker's request to refrain from discussing the case in front of the children and to continue any discussion regarding coordinating visits at a later time. When the social worker ended the visit, Mother and Father physically pushed the children away from the social worker and attempted to prevent the children from leaving with their caregivers. During the episode, B.K. and K.K. appeared confused, and E.K. elected to run to the caregiver for support. The Riverside County Sheriff's Office was called to intervene, and a sheriff's deputy had to physically separate the parents from the children to end the visit.

6. Findings and Orders

After hearing argument from all parties, the juvenile court denied Mother's and Father's section 388 petitions. The juvenile court then proceeded to conduct the section 366.26 hearing. With respect to the section 366.26 hearing, Mother and Father requested the juvenile court consider selecting a permanent plan of legal guardianship based upon the bond between the parents and children. In support of this request, Mother and Father merely requested that the juvenile court consider the arguments made by counsel in relation to the section 388 petitions. Neither parent offered any additional evidence or testimony for the juvenile court's consideration, and neither parent requested the juvenile court consider any additional reports beyond those submitted by DPSS at the beginning of the hearing.

The juvenile court concluded that no exception to termination of parental rights applied, terminated Mother's and Father's parental rights, and selected a permanent plan

8

of adoption for the children.

## III. DISCUSSION

The only claim of error asserted on appeal is that the juvenile court abused its discretion in determining that the parental-benefit exception set forth in section 366.26, subdivision (c)(1)(B)(i), did not apply. We conclude that the record does not show an abuse of discretion and affirm the order.

A. *General Legal Principles and Standard of Review*

"[T]he goal at the section 366.26 hearing is 'specifically . . . to select and implement a permanent plan for the child.' [Citations.] To guide the court in selecting the most suitable permanent arrangement, the statute lists plans in order of preference and provides a detailed procedure for choosing among them." (*In re Caden C.* (2021) 11 Cal.5th 614, 630 (*Caden C.*).) "Where possible, adoption is the Legislature's preferred permanent plan" because " ' "it gives the child the best chance at [a full] emotional commitment from a responsible caretaker." ' " (*In re Andrew M.* (2024) 102 Cal.App.5th 803, 814 (*Andrew M.*).)

"However, there are several exceptions to this rule. [Citation.] One such exception applies if '[t]he court finds a compelling reason for determining that termination would be detrimental to the child' because '[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship.' " (*In re L.A.-O.* (2021) 73 Cal.App.5th 197, 206 (*L.A.-O.*).) "[T]o establish the parental-benefit exception, a parent must prove three elements: '(1) regular visitation and contact, and (2) a relationship, the continuation of which would benefit the

9

child such that (3) the termination of parental rights would be detrimental to the child.' " (*Ibid.*, italics omitted.)

The juvenile court's determination regarding the parental-benefit exception is reviewed under a hybrid standard of review. (*Andrew M.*, *supra*, 102 Cal.App.5th at p. 815; *Caden C.*, *supra*, 11 Cal.5th at pp. 640-641.) " 'The first two elements involve factual determinations to which the substantial evidence standard of review applies. [Citation.] The final step, determining whether termination of parental rights would be detrimental to the child, is reviewed for abuse of discretion.' " (*Andrew M.*, at p. 815; *L.A.-O.*, *supra*, 73 Cal.App.5th at p. 206.) An abuse of discretion occurs when the juvenile court makes " ' " ' "an arbitrary, capricious, or patently absurd determination," ' " ' " (*L.A.-O.*, at p. 207) such that " ' "no reasonable person could agree with it" ' " (*Andrew M.*, at p. 815).

B. *The Juvenile Court Was Not Required To Make Detailed Findings*

As an initial matter, we disagree with Mother's argument that the juvenile court failed to undergo the necessary analysis to determine whether the parental-benefit exception applied. The juvenile court "is not required to make findings when it concludes that parental rights termination *would not be* detrimental" (*In re A.L.* (2022) 73 Cal.App.5th 1131, 1156), and " '[i]n the absence of evidence to the contrary, we presume that the court "knows and applies the correct statutory and case law" ' " (*People v. Jones* (2017) 3 Cal.5th 583, 616).

Here, the record shows that the juvenile court explicitly stated its conclusion that no exception to termination of parental rights under section 366.26, subdivision (c)(1),

10

applied because "[t]ermination of parental rights would not be detrimental to the minors."

Thus, the record shows that the juvenile court considered the parental- benefit exception but concluded that it did not apply. And, in the absence of any evidence to the contrary, we presume the juvenile court correctly understood and applied the law when reaching this conclusion.[4]

B. *The Record Does Not Evidence an Abuse of Discretion*

Given the juvenile court's statement on the record, it is unnecessary for us to address the parties' arguments related to the first two elements of the parental benefit exception in detail. Even assuming that substantial evidence in the record supports a showing of regular visitation and contact as well as a parental relationship with benefits to the children,[5] the juvenile court's statement makes clear that it found that termination of parental rights would not be detrimental. The juvenile court's determination on this element is reviewed for abuse of discretion. (*Andrew M.*, *supra*, 102 Cal.App.5th at p. 815; *L.A.-O.*, *supra*, 73 Cal.App.5th at p. 206.) And, in our view, the record does not suggest the juvenile court abused its discretion in reaching this conclusion.

---

[4] For this same reason, we also disagree with Father's suggestion that the juvenile court relied on improper factors when determining whether the parental-benefit exception applied. In support of this argument on appeal, Father cites to arguments asserted by the children's counsel at the time of hearing. However, none of the juvenile court's comments suggest it relied on any specific facts that were improper in reaching its decision. The fact that counsel may have referred to improper matters when making arguments before the court is not evidence that the juvenile court relied on any of those specific improper matters.

[5] DPSS concedes that evidence shows consistent visitation between the parents and the children but argues extensively that the evidence failed to support the existence of a substantial positive, emotional attachment between Father and the children.

Here, there was no evidence in the record before the juvenile court to suggest that termination of parental rights would cause the children to suffer the type of detriment that might outweigh the potential stability of adoption. E.K. was detained and eventually removed from her parents when she was approximately three months old, suggesting that any emotional bond she might have with her parents would not be the source of any significant detriment if severed. (See *Andrew M.*, *supra*, 102 Cal.App.5th at p. 819 [Affectionate visitation is not sufficient to show a meaningful bond where a child was very young when initially separated from his parents.].) When B.K. and K.K. were interviewed about the prospect of adoption, both expressed sadness at the idea, but also happiness at the prospect of a new stable home. Social workers did not report that either child expressed any strong objection or resistance to the prospect of adoption.

While DPSS's reports suggested visits between the children and parents were mostly pleasant, appropriate, and ended with expressions of love, DPSS also reported that on many visits, the children largely entertained themselves, and there was little direct engagement between the children and their parents. There were no reports that the children experienced any significant emotional outbursts when visitation ended. Additionally, while the caregivers reported that B.K. and K.K. experienced behavioral issues and difficulty with emotional regulation following some visits, the reports suggested these behavioral issues lasted only for a period of time without sustained impact on the children's ability to return to their normal behavioral patterns. During the one visit in which Mother and Father failed to attend, the children expressed initial sadness but were able to cope quickly and have an otherwise positive sibling visitation.

During the one visit in which a conflict erupted, there was no indication that B.K. or K.K. expressed their desire to continue with the visit, and E.K. turned to her caregiver for support instead of to Mother and Father. This is simply not the type of record that would suggest an enduring or serious detriment to the children's emotional or developmental wellbeing from severing their relationship with Mother and Father.

At the time of hearing, Mother and Father offered no additional information or evidence for the juvenile court to consider in support of their arguments that the parental-benefit exception applied. They did not offer a bonding study; did not offer any opinions by any licensed professionals who had evaluated or provided care to the children or to the family during the course of the dependency; and did not offer to testify regarding the perceived strength of the relationship they had with the children. It was the parents' burden to show detriment in support of the third element of the parental-benefit exception to termination of parental rights. Where the record contains no evidence to suggest that severing the relationship between the parents and children would lead to any lasting harm to the children, the juvenile court's conclusion that Mother and Father had not met their burden cannot be considered arbitrary or capricious, such that it would amount to an abuse of discretion.

On appeal, Mother and Father argue that showing the existence of a positive emotional attachment with their children was sufficient to establish detriment.[6] However, even where a parent shows "that the child has a substantial, positive, emotional

---

[6] Mother does not assert any independent argument of her own but simply joins in Father's argument.

attachment to the parent—the kind of attachment implying that the child would benefit from continuing the relationship," the parent must separately show that "terminating that attachment would be detrimental to the child even when balanced against the countervailing benefit of a new, adoptive home." (*Caden C.*, *supra*, 11 Cal.5th at p. 636; see *In re A.L.*, *supra*, 73 Cal.App.5th at p. 1161.) That has not been demonstrated in this case. Here, although very loving, the parents often brought chaos and confusion into their relationship with the children. In this case, we discern no abuse of discretion in the juvenile court's determination that the termination of parental rights would not be detrimental when balanced against the benefit and stability of a new adoptive home.

"It is only '[w]hen the relationship with a parent is so important to the child that the security and stability of a new home wouldn't outweigh its loss, [that] termination would be "detrimental to the child due to" the child's beneficial relationship with a parent.'" (*Andrew M.*, *supra*, 102 Cal.App.5th at p. 818.) The mere fact that there may be some "benefits in continued visits with loving parents to which a child has some substantial attachment" is insufficient. (*Id.* at p. 820.) Instead, a parent "must prove some type of harm beyond the fact that their loving visits would cease." (*Ibid.*)[7] Thus,

---

[7] Father's reliance on *In re E.T.* (2018) 31 Cal.App.5th 68 is unpersuasive. First, the analysis in *E.T.* was not conducted with the benefit of our Supreme Court's more recent clarification of the necessary elements of the parental-benefit exception and applicable standard of review because *E.T.* predates *Caden C.* Second, the factual record in *E.T.* is clearly distinguishable, as the parent offered extensive live testimony regarding the strength of her bond with her children, and the juvenile court expressly found the parent's testimony credible. (*In re E.T.*, at pp. 73-75.)

the fact that Mother and Father point to the existence of ongoing, positive visitation with the children is not sufficient to show an abuse of discretion by the juvenile court.

Where Mother and Father merely assert the existence of the parental-benefit exception at the time of a section 366.26 hearing, but the record contains no evidence to suggest detriment to the children that would result from termination of parental rights, the juvenile court's conclusion that Mother and Father failed to show detriment that would support an exception to termination of parental rights was not arbitrary, capricious, or outside the bounds of reason. Thus, even assuming that the evidence in the record is sufficient to show Mother and Father participated in consistent visitation and had a positive, emotional bond with their children, we conclude that Mother and Father have failed to establish the juvenile court abused its discretion and reversal is not warranted.

## IV. DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS
J.

We concur:

RAMIREZ
P. J.

McKINSTER
J.